IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARON S. HENRY,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>BANK OF AMERICA CORPORATION et al.,<br><br>　　　　Defendant.<br>　　　　　　　　　　　　　　　　／ | No. C 09-628 CRB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO STRIKE PURSUANT TO CAL. CODE CIV. PRO. § 425.16** |

　　　　Defendants Bank of America ("BofA") and Nancy Mendoza (collectively, "Defendants") move to strike Plaintiff's complaint based on California Code of Civil Procedure § 425.16. This Court previously denied Defendants' motion in order to permit Plaintiff some time to conduct discovery. That discovery has now been completed.

　　　　This Court concludes that, as argued by Defendants, the Annunzio-Wylie Money Laundering Act immunizes Defendants for any damages flowing from the act of reporting suspicious banking activities to the police. That Act contains a broadly worded immunization provision, the plain terms of which apply the present action.

　　　　Plaintiff argued at the hearing, however, that this act does not immunize Defendants for the act of refusing her check, which occurred before and apart from Defendant Mendoza's decision to call the police. However, as to Plaintiffs claims under the Unruh and Bane Acts and her claim for Intentional Infliction of Emotional Distress, Plaintiff has failed

to make a prima facie case. Indeed, while Plaintiff attempts to point this Court toward circumstantial evidence of racial animus, she fails to do so. Plaintiff has shown nothing more than the fact that Mendoza noticed that Plaintiff was African-America. That is clearly insufficient for purposes of this action. Defendants, on the other hand, have presented unrebutted evidence that Defendant Mendoza had a non-discriminatory motive in refusing Plaintiff's check.

However, Plaintiff has presented sufficient evidence to establish that there is a question of fact as to whether Mendoza's conduct in refusing Henry's check was in accordance with her duty of care. Therefore, her claim for negligence remains alive.

## BACKGROUND

This lawsuit arises out of an incident at the Noe Valley Branch of Bank of America after which Plaintiff Sharon Henry was arrested on suspicion of check fraud.[1] Henry, an African-American woman, alleges that the treatment she received was motivated by a racially discriminatory purpose.

According to the allegations of the complaint, Henry, a BofA account holder and a deputy district attorney in San Mateo County, was arrested after attempting to deposit with a bank teller a $27,500 check made out to her by her domestic partner, Kathleen Wilkinson. The check was drawn from Wilkinson's credit card account (also a BofA account). Henry had originally presented the check to a teller, but that teller was unable to process deposits in excess of $5000. Amended Mendoza Decl. ¶ 5. The teller instead brought the check to Mendoza, a supervisor, so that she could verify the authenticity of the check. Id. Mendoza sought to confirm the authenticity of the check by contacting the account holder by telephone. Id. ¶ 10. After looking up the name "Kathleen Wilkinson" in a BofA database, Mendoza placed a call to the listed phone number. Id. ¶ 11. After confirming with the listed Wilkinson that no such check had been written, and further confirming that the signature on the check did no match the Bank's signature card for "Kathleen Wilkinson," Mendoza called

---

[1] The following recitation of facts is taken largely from this Court's prior order. See Dkt. #22.

2

the police. Id. It was later revealed, after Henry was taken into custody, that Mendoza had contacted the wrong "Kathleen Wilkinson," and that the check had indeed been valid. Id. ¶ 11.

Henry filed a complaint in state court against Bank of America, Mendoza (the office manager), Chow and Lee (the police officers), and the City and County of San Francisco, asserting eight claims for relief. The claims against the BofA Defendants are for violation of the Unruh Civil Rights Act (fourth claim), violation of Plaintiff's constitutional rights under the Bane Act, California Civil Code § 52.1 (fifth claim), intentional infliction of emotional distress (sixth claim), and negligence (seventh claim).

The City Defendants removed the case to this Court. BofA previously moved to dismiss Plaintiff's eighth claim for relief (wrongful dishonor) for failure to state a claim upon which relief can be granted. This Court granted the motion. The BofA Defendants now move to strike from the complaint the remaining claims against them, pursuant to California's anti-SLAPP statute.

## DISCUSSION

Pursuant to California's anti-SLAPP statute, the BofA Defendants move to strike Plaintiff's causes of action against them for violation of the Unruh Civil Rights Act, violation of Plaintiff's constitutional rights, intentional infliction of emotional distress, and negligence.

> A SLAPP suit—a strategic lawsuit against public participation—seeks to chill or punish a party's exercise of constitutional rights to free speech and to petition the government for redress of grievances. The [California] Legislature enacted Code of Civil Procedure section 425.16—known as the anti-SLAPP statute—to provide a procedural remedy to dispose of lawsuits that are brought to chill the exercise of constitutional rights.

Rusheen v. Cohen, 37 Cal. 4th 1048, 1055-56 (2006) (citations omitted). The anti-SLAPP statute "establishes a procedure where the trial court evaluates the merits of the lawsuit using a summary-judgment-like procedure at an early stage of the litigation." Soukup v. Law Offices of Herbert Hafif, 39 Cal. 4th 260, 278 (2006).

The anti-SLAPP statute applies in federal court. See, e.g., U.S. ex rel. Newsham v. Lockheed Missiles & Space Co., Inc., 190 F.3d 963, 972-73 (9th Cir. 1999); Thomas v. Fry's Elecs., Inc., 400 F.3d 1206, 1206-07 (9th Cir. 2005) (reaffirming Lockheed and finding the

3

district court "erroneously concluded that the anti-SLAPP statute was unavailable in federal court"); Globetrotter Software, Inc. v. Elan Computer Group, Inc., 63 F. Supp. 2d 1127, 1130 ("[I]t appears that under the Erie analysis set forth in Lockheed the anti-SLAPP statute may be applied to state law claims which . . . are asserted pendent to federal question claims.").

Under the anti-SLAPP statute, a litigant may move to strike a "cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the Untied States or California Constitution in connection with a public issue." Cal. Civ. Proc. Code § 425.16(b)(1). Protected acts include "any written or oral statement or writing made in connection with an . . . official proceeding authorized by law." Id. § (e)(2).

The California Supreme Court has summarized the analysis a court must undertake when a defendant moves to strike a plaintiff's claims pursuant to the anti-SLAPP statute as follows:

> Section 425.16, subdivision (b)(1) requires the court to engage in a two-step process. First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity. The moving defendant's burden is to demonstrate that the act or acts of which the plaintiff complains were taken "in furtherance of the [defendant]'s right of petition or free speech under the United States or California Constitution in connection with a public issue," as defined in the statute. (§ 425.16, subd. (b)(1).) If the court finds such a showing has been made, it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim. Under section 425.16, subdivision (b)(2), the trial court in making these determinations considers "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based."

Equilon Enters. v. Consumer Cause, Inc., 29 Cal. 4th 53, 67 (2002).

To establish a "probability" of prevailing on the merits, a plaintiff must demonstrate that the complaint is both legally sufficient and supported by a prima facie showing of facts sufficient to support a favorable judgment if the evidence submitted by plaintiff is credited. Navellier v. Sletten, 29 Cal. 4th 82, 88-89 (2002). In making the determination, a court considers the pleadings and evidentiary submissions of both plaintiff and defendant but does not weigh credibility or comparative strength of the evidence. Soukup, 39 Cal. 4th at 291. A court considers defendant's evidence only to determine if it defeats plaintiff's

showing as a matter of law. Id. The plaintiff need only establish that his or her claim has "minimal merit" to avoid being stricken as a SLAPP. Navellier, 29 Cal. 4th at 89.

**A. "Arising From" Protected Activity**

The first step in the analysis requires the Court to determine whether the BofA Defendants have made a showing that the challenged causes of action arose from a protected activity. This Court has previously ruled that the claims in this case "arise from" protected activity, and Plaintiffs do not renew any argument to the contrary. Therefore, this prong is satisfied.

**B. Probability of Prevailing on the Merits**

In support of their motion, Defendants make an argument that was not made when the motion first came before this Court. They now argue that "the Annunzio-Wylie Anti-Money Laundering Act . . . confers absolute immunity on 'any financial institution that makes a voluntary disclosure of any possible violation of law . . . to a government agency . . . .'" Mot. at 16 (quoting 31 U.S.C. § 5318(g)(3)(a)). Because Henry's claims against BofA arise out of Mendoza's "voluntary disclosure" of a "possible violation of law . . . to a government agency," BofA argues that it is immunized.

Indeed, the language of the act and case law interpreting it support this interpretation. The immunization provision reads as follows:

> Any financial institution that makes a voluntary disclosure of <u>any possible violation of law</u> or regulation to a government agency or makes a disclosure pursuant to this subsection or any other authority, <u>and any director, officer, employee, or agent of such institution</u> who makes or requires another to make any such disclosure, shall not be liable to any person under any law or regulation of the United States, <u>any constitution, law or regulation of any State</u> or political subdivision of any State or under any contract or other legally enforceable agreement (including any arbitration agreement), for such disclosure or for any failure to provide notice of such disclosure to the person who is the subject of such disclosure or any other person identified in the disclosure.

31 U.S.C. § 5318(g)(3)(A) (emphasis added).

Plaintiff makes two arguments in opposition to the application of the immunization provision: (1) simply that under the terms of the Act, immunity does not apply in this case, and (2) immunity is granted only when the report is made in "good-faith," which Plaintiff further contends does not include Mendoza's report. These arguments are not persuasive.

5

First, Henry argues that she "did not engage in any conduct that would trigger the Act," Opp. at 14, and that the Act's immunization provision therefore does not apply. In support of this contention Henry cites to the CFR provision covering what are known as Suspicious Activity Reports ("SARs"), and points out that Henry did not engage in any conduct that triggers mandatory reporting. Henry further argues that "there is no allegation in any of BofA's pleadings that BofA followed the regulations by the Secretary of the Treasury requiring Suspicious Activity Reports." Opp. at 14.

These citations are irrelevant. Under the statute, it simply does not matter whether or not BofA was required to report anything, nor does it matter whether BofA reported violations in the proper manner. The immunization provision clearly applies both to "disclosure[s] pursuant to this subsection" (e.g. a SAR) and to any "voluntary disclosure of any possible violation of law." 31 U.S.C. 5318(g). This latter clause is far broader than the former, and reaches disclosures that have nothing to do with SARs. Therefore, citations to regulations relevant to the mechanics of a SAR simply cannot limit the breadth of a preemption provision that also applies to "voluntary disclosure[s]."

Plaintiff also argues that the Act's immunity provision has an implied good-faith requirement: "Henry's claims against BofA are not felled because BofA policies do not authorize Mendoza to call the police, and therefore the bad faith disclosure by Mendoza is not protected any of the safe harbor provisions of § 5318(g)(3)." Opp. at 14. According to Henry, because Mendoza's call to the police was not authorized by BofA's policies, that call was made in bad faith. And because the call was made in bad faith, Mendoza is not immunized.

The weight of circuit-level authority is opposed to reading a "good faith" requirement into the Act. The only circuit to have done so is the Eleventh Circuit, which reached the question in Lopez v. First Union National Bank, 129 F.3d 1186 (11th Cir. 1997). See id. at 1192 ("In order to be immune from liability, it is sufficient that a financial institution have a good faith suspicion that a law or regulation may have been violated, even if it turns out in hindsight that none was."). Two other circuits have explicitly criticized the reasoning and

6

conclusion in Lopez. The Second Circuit explains that "[t]he Act broadly and unambiguously provides for immunity from *any* law (except the federal Constitution) for *any* statement made in a Sar by *anyone* connected to a financial institution. There is not even a hint that the statements must be made in good faith in order to benefit from immunity." Lee v. Bankers Trust Company, 166 F.3d 540, 544 (2d Cir. 1999). The First Circuit likewise has concluded that the language and legislative history of the Act caution against imposing an implied "good faith" requirement. See Stoutt v. Banco Popular de Puerto Rico, 320 F.3d 26, 31 (1st Cir. 2003). See also Eyo v. United States, No. 06-6185, 2007 WL 4277511, at *5 (D.N.J. Nov. 29, 2007) (collecting cases).

This Court follows the weight of circuit-level authority and will not require that the disclosure be in good faith. Had Congress wished to include such a provision, it could have easily done so. This is particularly true where, as here, a prior version of the Act included such a provision, but the requirement was dropped in a later draft. See 137 Cong. Rec. s17,910, S17,969 (1991). The plain language of the Act provides immunity for a "voluntary disclosure of any possible violation of law," and to impose a good faith requirement on top of this clear statutory text would result in a far narrower preemption provision.

Because the claims against BofA in this case all arise in part out of such a voluntary disclosure, Mendoza and BofA are immune to Henry's claims insofar as they seek to impose liability based on Mendoza's phone call to police. To the extent that her claims seek to impose such liability, they are stricken.

**D. Litigation Privilege**

Defendants seek to use California's litigation privilege in the same way. They argue that reports of suspected illegal activity constitute statements immunized under California Civil Code Section 47. Because the issues surrounding the scope of the litigation privilege concern unresolved questions of state law, and because the issue of liability premised on Mendoza's report to police can be resolved based solely on the Annunzio-Wylie Act, this Court does not reach whether § 47 also provides immunity.

7

**E. Refusal to Deposit and Cash Check[2]**

Plaintiff next argues that, even assuming the Defendants are immune to suit based upon Mendoza's call to the police, the complaint also alleges a separate violation. Before any call was made, Plaintiff alleges that Defendants wrongfully refused to permit her to deposit her check.[3] According to Plaintiff, this is separately actionable under the Unruh and Bane Acts as racial discrimination. Plaintiff further argues that this refusal supports actions for intentional infliction of emotional distress and negligence. As explained below, however, Plaintiff has failed to make a prima facie case of racial discrimination or of intentional infliction of emotional distress. No reasonable jury could conclude, based upon the evidence submitted to the court, that Mendoza was motivated by racial animus or that her conduct rose to the level of intentional infliction of emotional distress. Even if she had met this initial burden, Defendants have offered a legitimate non-discriminatory reason for Mendoza's conduct, and Plaintiff has failed to rebut it. See McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). However, Plaintiff has pointed to evidence that could suggest to a jury that Mendoza's actions in refusing the check were negligent.

As noted above, to establish a "probability" of prevailing on the merits for purposes of an Anti-SLAPP suit, a plaintiff must demonstrate that the complaint is "supported by a prima facie showing of facts sufficient to support a favorable judgment if the evidence submitted by plaintiff is credited." Navellier v. Sletten, 29 Cal. 4th 82, 89 (2002) (emphasis added). Claims under the Unruh Act require a showing of intentional discrimination. While Plaintiff has no direct evidence of racial animus, she points to circumstantial evidence that

---

[2] Henry's moving papers allege that Mendoza "testified falsely" when she averred in her declaration that Henry presented her check "for payment." Opp. at 2. This overstates the facts. The evidence currently before this Court – submitted by Henry herself – indicates that Henry sought to deposit a portion of the funds and cash another portion. See Siegel Decl. ex. C

[3] Even though the choice not to honor Henry's check is not, in itself, "protected activity" under the anti-SLAPP statute, it remains subject to Defendants' Anti-SLAPP motion. As this Court has previously noted, "[w]hen the reports of a defendant to governmental agencies form a 'substantial part' of the factual basis for claims, such claims are subject to the anti-SLAPP statute even though they are also partially based on other occurrences." Dkt. #22, at 8. Plaintiff's allegations interrelated both the refusal to honor the check and the call to the police, and in fact those occurrences were part and parcel of the same transaction. See id.

8

she believes is "sufficient to support a favorable judgment." See Morgan v. The Regents of the University of California, 88 Cal. App. 4th 52, 67 (2000) (holding in a discrimination case that circumstantial evidence can be sufficient).

Contrary to Plaintiff's argument, the facts currently in the record are not sufficient to support a judgment in her favor. Therefore, Defendants' motion to strike must be granted. First, Henry points to the fact that Mendoza testified that she was absolutely convinced, before calling the police, that Henry was engaged in fraudulent activity. However, Henry has no evidence that this conviction arose from racial animus. On the contrary, Plaintiff recognizes that Mendoza believed she had spoken to a family member of the check's issuer and had reason to believe the issuer was out of the country. Mendoza's confidence that something fraudulent was occurring, based on these facts, is devoid of any racial aspect.

Next, Henry argues that the evidence shows that Mendoza "obsessively referred to Henry's race during depositions and in her phone calls to the home of the 'Kathleen Wilkinson' in the COIN database and to the SFPD." Opp. at 8. The evidence shows nothing of the sort. Henry cites to four passages of Mendoza's deposition to support the claim. First, in response to being asked whether Mendoza had described Sharon Henry to Kathleen Wilkinson on the phone, Mendoza stated "I recall saying she's African-American, in her – maybe her 30's, long hair. Couldn't really see what she was wearing, because like I mentioned before, I'm in the back." In other words, when Mendoza described Henry over the phone, she mentioned that Henry was African-American. Siegel Decl. ex. E, 54:14-19. Next, Henry cites to a portion of the deposition where Mendoza recalls describing Henry's appearance, this time after being asked by the police to do so. Again, she mentions Henry's race. Id. 60:19-61:1. Next, Henry cites to the following answers given by Mendoza in response to questions by Plaintiff's counsel:

Q: [Did Henry's driver's licence h]ave her picture on it?
A: Yes, it did.
Q: So you could see that she was African American?
A: Yes.

9

Id. 82:16-22. In other words, upon being asked <u>by Henry's attorney</u> whether Henry's identification revealed that she was African-American, Mendoza responded "Yes." This, according to Henry, reveals Mendoza's "obsessive[]" focus on Henry's race.

Finally, Henry cites to another question and answer exchange in Mendoza's deposition:

Q: So, at the time that you attempted to address her, you had seen her?
A: I had caught a glimpse of her, yes.
Q: And you knew that she was African-American?
A: Yes, absolutely.

<u>Id.</u> 130:8-12. Once again, Henry asks this Court to conclude that, because Mendoza noticed Henry's race, she was "obsess[ed]," Opp. at 8, with it. She further asks this Court to conclude, based on this "obsession," that Mendoza was racially motived. Such a conclusion would not only be unsupported by the evidence, it would be contrary to the evidence.

Plaintiff next points out that "Mendoza admits that she treated Henry very differently than a white customer who physically threatened her on a previous occasion." Opp. at 8. But this is comparing apples to oranges. Mendoza did not suspect that the Caucasian customer had committed a crime. He had been angry, had "kind of pushed" her, and had then left the bank. Her decision not to call police in that context certainly does not cast doubt on what motivated her to call the police when she suspected fraud. In any event, the record also reflects that Mendoza has been perfectly willing to call the police regarding Caucasian customers when the need arises. Elliot Decl. ex. A, 63:17-65:25.

As explained by the California Supreme Court, "though the court [in an anti-SLAPP motion] does not weigh the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim." <u>Wilson v. Parker, Covert & Chidester</u>, 28 Cal. 4th 811, 821 (2002) (citations omitted). Accordingly, this court has not weighed the credibility of evidence. On contrary, Plaintiff simply does not have evidentiary support for her claims, and Defendant has

10

presented evidence showing a non-discriminatory motive. Therefore, pursuant to § 425.16, Plaintiff's claims four and five are stricken.

**F. Negligence and Intentional Infliction of Emotional Distress ("IIED")**

Finally, Plaintiff asserts claims of intentional infliction of emotional distress and negligence. As to the IIED claim, such an action requires that the conduct in question be "extreme and outrageous," committed "with the intention of causing, or reckless disregard of the probability of causing, emotional distress." Cervantez v. J.C. Penney Co., 24 Cal. 3d 579 (1979). First, Henry has not submitted evidence to support the conclusion that Mendoza's conduct was "extreme and outrageous." The record reflects that Mendoza had reason to believe that Henry was committing a crime, and therefore called the police. It is not "extreme and outrageous" to call the authorities when an individual has reason to believe a crime is being committed. Henry, of course, has alleged that the actual reason Mendoza called the police was racially motivated. However, there is no evidence to support this allegation. Therefore, the evidence submitted to this Court is incompatible with an IIED action. The claim is therefore stricken.

The negligence claim, however, survives. The record reflects that Mendoza searched a BofA database in order to ascertain the identity of the check's issuer, but that database "identifies California customers with deposit accounts only, *e.g.*, savings and checking accounts." Amended Mendoza Decl. ¶ 11. The check at issue, however, was a convenience check that drew on a credit card account. According to Mendoza herself, the check's issuer "was not identified by the COIN customer name search because [she] maintains a credit card account only with the Bank." Id. Given this evidence, Plaintiff has made a prima facie showing that Mendoza failed to act according to the relevant standard of care. A jury might well conclude that Mendoza should have known that the COIN database would not necessarily identify the check's issuer, and hence did not give a valid basis for refusing to honor the check.

///

///

# CONCLUSION

For the reasons above, the motion is GRANTED in part and DENIED in part. Plaintiff's claims are stricken with the exception of the claim for negligence.

**IT IS SO ORDERED.**



Dated: February 2, 2010

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE