**\*E-Filed 08/23/2010\***

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

SHARON S. HENRY,

    Plaintiffs,

v.

BANK OF AMERICA CORPORATION;
NANCY MENDOZA; CITY AND
COUNTY OF SAN FRANCISCO; AND
DOE ONE through DOE TEN, inclusive,

    Defendants.
_____/

No. C 09-0628 RS

**ORDER (1) GRANTING ATTORNEYS' FEES AND COSTS, (2) DENYING REQUEST TO DELAY RULING ON THE MOTION FOR ATTORNEYS' FEES AND COSTS, AND (3) STAYING IMPLEMENTATION OF THE FEE AWARD**

## I. INTRODUCTION

Bank of America, N.A. and Nancy Mendoza (collectively, "BofA") move the Court to fix an amount of attorneys' fees and costs pursuant to Code of Civil Procedure section 425.16(c). Plaintiff Sharon Henry maintains that the Court should deny any award of fees because BofA did not "prevail" on its anti-SLAPP motion and because BofA submitted improper billing statements. In the alternative, Henry asks that the Court stay the motion until the termination of litigation in this case. Henry also requests the Court to reduce any fee award. After a careful review of the timesheets and for the reasons stated below, the motion is granted and Henry's request for a stay is denied. Fees are awarded in the amount of $52,698 and costs are awarded in the amount of $931.40.

## II.     BACKGROUND

Although this case has an involved factual and procedural background, the limited facts relevant to this motion are as follows: Henry was arrested on suspicion of check fraud at the Noe Valley branch of Bank of America on March 15, 2008.  Henry, an African-American woman, alleged that the treatment she received was motivated by a racially discriminatory purpose and filed a complaint in state court against BofA and various other City and County of San Francisco Defendants (the "City Defendants") asserting eight claims for relief.  The five claims against BofA were for violation of the Unruh Civil Rights Act, violation of Henry's constitutional rights under the Bane Act, intentional infliction of emotional distress, negligence and wrongful dishonor.

The City Defendants removed the case to this Court.  In April 2009, the Court granted BofA's motion to dismiss Henry's claim for wrongful dishonor under FRCP 12(b)(6), but denied BofA's motion to strike her remaining claims against BofA under California's anti-SLAPP statute in order to allow Henry to conduct additional limited discovery.  Pursuant to the Court's orders, the parties conducted further limited discovery, including three depositions and document production.

BofA renewed its motion to strike after the conclusion of discovery, and on February 2, 2010 the Court granted the motion as to Henry's claims for relief under the Unruh Civil Rights Act, the Bane Act and intentional infliction of emotional distress.  The Court denied the motion as to Henry's negligence claim for BofA's refusal to honor her check, which is Henry's sole remaining claim against BofA.

## III.     LEGAL STANDARD

Pursuant to California's anti-SLAPP statute, "a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs." Cal. Code Civ. P. § 425.16(c). An award of attorney's fees to a prevailing party on a special motion to strike is mandatory. *Id*; *see also, Pfeiffer Venice Properties v. Bernard,* 101 Cal. App. 4th 211, 215 (2002). "[A] party who partially prevails on an anti-SLAPP motion must generally be considered a prevailing party unless the results of the motion were so insignificant that the party did not achieve any practical benefit

from bringing the motion." *Mann v. Quality Old Time Service, Inc.,* 139 Cal. App. 4th 328, 340 (2006).

When a court grants in part and denies in part a motion to strike, the court may limit the fees awarded to those incurred in moving on the successful claims. *Id*. at 339 n. 5.  Moreover, the prevailing party is not necessarily entitled to all fees incurred simply because the successful and unsuccessful claims involved overlapping factual or legal issues. *Id*. at 344.  Instead, the court must "determine the lodestar amount for the hours expended on the successful claims," and then "consider the defendant's relative success on the motion in achieving his or her objective, and reduce the amount if appropriate." *Id*. at 345.  This analysis involves various factors, including "the extent to which the defendant's litigation posture was advanced by the motion, whether the same factual allegations remain to be litigated, whether discovery and motion practice have been narrowed, and the extent to which future litigation expenses and strategy were impacted by the motion." *Id*.

The California Supreme Court has upheld the lodestar method for determining the appropriate amount of attorneys' fees for a prevailing party on an anti-SLAPP motion. *Ketchum v. Moses*, 24 Cal. 4th 1122, 1136 (2001).  Under this method, the court evaluates detailed documentation of the time spent and the reasonable hourly rate for each attorney. *Id*. at 1141.  The burden of establishing a right to fees rests with the party seeking the fees. *Christian Research Inst. v. Alnor*, 165 Cal. App. 1315, 1320 (2008).  The moving party must present "substantial evidence" to meet that burden. *Macias v. Hartwell*, 55 Cal. App. 4th 669, 674 (1997).

IV.   DISCUSSION

A.   <u>Prevailing Party</u>

BofA prevailed on the motion to strike because there is no question that the benefits it gained from the Court's February 2, 2010 Order were substantial and significant.  Henry argues that, because her negligence claim remains intact, she actually prevailed at the motion to strike.  In support of this argument, she maintains that the facts to be litigated, the work to be done, and the possible outcome of the case have not changed.  She argues that (1) all of the facts previously

alleged will still be relevant at trial because the facts giving rise to the negligence claim include all those alleged in the Complaint, (2) the work required to try the case has not changed because the same witnesses will be in play, and (3) the possible outcome of the case is the same because BofA is accountable for any foreseeable injuries that resulted from its actions.  These arguments, however, are not persuasive; the Court's Order very clearly narrowed BofA's potential liability, the relevant factual allegations, and the work required to litigate the remainder of the case.

As an initial matter, the Court's Order struck three of the four outstanding claims against BofA, and, with only the negligence claim remaining, Henry may not recover punitive damages, *Emerson v. J. F. Shea Co.*, 76 Cal. App. 3d 579 (1978) (no punitive damages for negligence) or attorneys' fees. *Plemon v. Nelson*, 148 Cal. App. 3d 720 (1983) (no attorneys' fees for negligence claim in tort).  Although one certainly cannot predict how much a jury would award were it to find in favor of plaintiff in a negligence suit, it is safe for the purposes here to assume that an award for damages under the Unruh Civil Rights Act, the Bane Act, intentional infliction of emotional distress *and* negligence would be substantially higher than an award simply for negligence alone.

Moreover, notwithstanding plaintiff's arguments to the contrary, the Court's ruling in the anti-SLAPP motion substantially limited the factual allegations to be litigated against BofA. Indeed, while the Court kept Henry's negligence claim intact, it specifically limited the actions for which BofA would be held liable; according to the Court's Order, BofA is "immune to Henry's claims insofar as they seek to impose liability based on Mendoza's phone call to police." Doc. No. 78 at 7.  Henry maintains that BofA could still be held liable for the "foreseeable consequences of [Mendoza's] investigation," which include the "police interrogation, arrest, and incarceration." Doc. No. 88 at 6.  However, to the extent that Mendoza's investigation involved her phone call to the police, and to the extent that the interrogation, arrest and incarceration flowed from that phone call, BofA is immune from liability, and any such claims imposing liability on these actions have been stricken.  Therefore, the factual allegations in the Complaint relating to the interrogation, arrest and incarceration that resulted from Mendoza's phone call, while arguably foreseeable events and appropriate for consideration under a typical negligence analysis, are immaterial to this case now.

NO. C 09-00628 RS
ORDER

4

Henry's citation to *Rodriguez v. Bethlehem Steel Corp.*, 12 Cal. 3d 382, 399 (1974) is inapposite because in that case the court did not limit any of plaintiff's claims or factual allegations in a motion to strike.

Plaintiff also asserts that the work in litigating the remaining negligence claim will be "very similar" to the work that would have been involved in litigating the case prior to the Court's Order. While the three deposed witnesses relevant to the motion to strike will also be relevant to the ongoing proceedings, BofA will logically spend less time and expenses litigating a lone negligence claim than it would have spent litigating race discrimination, intentional infliction of emotional distress and negligence. BofA will not have to contend with testimony from any of the officers who arrived at the scene as a result of Mendoza's 911 call, nor will it have to deal with motions practice as to any of the three struck claims. Therefore, because BofA's potential liability, the facts to be litigated and the work required to try the remainder of the case have been substantially narrowed, BofA "prevailed" in its anti-SLAPP motion.

B.  Fees

BofA's two attorneys provided contemporaneous times records, attached to declarations, purporting to show that they spent a combined total of 285.10 hours prosecuting the initial motion to strike, handling related discovery, litigating the renewed motion to strike and preparing the fee motion. The attorneys' rates were $225 per hour for the associate and $515 per hour for the partner. Henry does not dispute that the rates charged were reasonable, but rather maintains that BofA block-billed, did not apportion its hours and overbilled by including non-compensable hours.

As to the non-compensable hours, plaintiff highlights fees requested for hours spent on discovery, the Rule 26 disclosures, the protective order, the negligence claim, the Rule 12(b)(6) motion, the mediation and the case management proceedings. Fee awards include "services for all proceedings, including discovery initiated by the opposing party… directly related to the special motion to strike." *Jackson v. Yarbray*, 179 Cal. App. 4th 75, 92 (2009). Fees also include expenses for addressing matters with factual or legal issues that are "inextricably intertwined" with those issues raised in an anti-SLAPP motion. *Kearney v. Foley and Lardner*, 553 F.Supp.2d 1178, 1184

1  (S.D. Cal., 2008) ("All expenses incurred on common issues of fact and law qualify for an award of
2  attorneys' fees under the anti-SLAPP statute and those fees need not be apportioned").

3  Henry provides a list of entries that she believes are related to non-compensable general intake and discovery. The vast majority of these entries, however, appear to involve the depositions, production of documents and responses to interrogatories that were ordered by the Court. The Court ordered these depositions and document production so that Henry could complete limited discovery in responding to the anti-SLAPP motion. This discovery, then, was initiated by plaintiff and directly related to the motion to strike, so is therefore compensable.[1] Similarly, the time spent on the protective order was part of, related to, and a direct result of, this discovery initiated by Henry for the purposes of the anti-SLAPP motion. The Rule 26 report, however, was neither initiated by Henry nor directly related to the motion to strike, but was rather a general discovery report prepared for the litigation as a whole. Therefore, the 5.9 hours of time billed by Mr. Elliott for work spent on the Rule 26 report shall be deducted. Additionally, the time BofA's counsel spent on "client status updates," case management proceedings, conducting general interviews or investigation regarding the incident, addressing removal, reviewing local rules regarding motions, and in mediation proceedings does not appear to have been solely for the purpose of the anti-SLAPP motion; nor has BofA apportioned the time spent on these issues or shown by substantial evidence that it was inextricably intertwined with time spent on the anti-SLAPP motion, as opposed to simply general case work independent of the motion. Therefore, another 55.7 hours of the time billed by Mr. Elliot shall not be included. As to time BofA's counsel spent on preparing its motion for attorney's fees, BofA has not shown by substantial evidence that these costs are appropriately included among those it incurred in bringing the successful motion to strike. Therefore, an additional 20.8 hours of the time billed by Mr. Elliot shall be removed.

Henry also argues that BofA's counsel have not apportioned the time spent on the negligence claim from that spent on the motion to strike, although she does not specify which entries should have been apportioned. The time spent on the negligence claim, however, is

---
[1] For the same reason, the bill of costs for $931.40 incurred as a result of the depositions is also compensable.

compensable because the legal and factual issues related to it were inextricably intertwined with those in the anti-SLAPP motion. Indeed, BofA's arguments that Mendoza had a reasonable, non-discriminatory reason for her actions were central to its defense against Henry's negligence claim as well as to her discrimination claims. Similarly, BofA argued that it had immunity from, and a litigation privilege against, the negligence claim as well as the three claims that the Court struck. Simply because the Court denied the motion to strike as to the negligence claim does not mean that the legal and factual issues related to it were not intertwined with the anti-SLAPP motion.

Henry also maintains that BofA improperly block-billed for the time its attorneys spent on the Rule 12(b)(6) motion. BofA's lawyers billed 9.2 hours for work done on both the Rule 12(b)(6) motion and the motion to strike, including time for reviewing the Court's April 17, 2009 Order and attending the April 10, 2009 hearing. As the Rule 12(b)(6) motion and the initial motion to strike were filed simultaneously, and orally argued at the same hearing, they logically involved work and issues that were intertwined and could not be separately billed. Counsel for BofA has suggested that, if a portion of the time charged for these motions must be attributed to the Rule 12(b)(6) motion, the Court reduce these entries by 20% in light of the fact that the motion to dismiss concerned one of the five claims against BofA. The Court adopts this recommendation and eliminates another 1.5 hours of time billed by Mr. Elliott and .4 hours of time billed by Mr. Chilton.

No significant, negative multiplier is warranted here because the time entries billed by BofA's counsel are not duplicative or excessive. Henry suggests that BofA's fees were exceedingly high, and cites two cases where a court substantially reduced a fee request. Neither of those cases, however, is persuasive. In *Christian Research Inst.*, the court reduced fees because the case arose out of a single defamation claim and involved a single anti-SLAPP motion on a single issue that was not particularly complex. 165 Cal. App. 4th at 1318-1320. Additionally, the claimed fees included duplicative, unnecessary work done by five attorneys that was block-billed. *Id*. Other than four entries by Mr. Chilton that insufficiently apportion work done on the anti-SLAPP motion from that done on the lawsuit generally, none of those factors exist here. BofA's counsel consisted of two attorneys, a partner and an associate, who do not appear to have performed duplicative work.

NO. C 09-00628 RS
ORDER

7

Moreover, whether the litigation privilege and immunity defenses were typical of the sort normally addressed by BofA, they involved complex legal and factual analysis in areas that have open questions of law and, as a result of the deposition and document production requests by plaintiff, required extensive discovery.

In *Maughan v. Google Tech., Inc.*, the court reduced requested fees of $112,288 to $23,000 largely because the expertise of counsel for Google in the applicable area of law rendered its claim for over 200 hours excessive. 143 Cal. App. 4th 1242, 1248 (2006). The court also pointed to the fact that the case had been active for only 6 months at the time the anti-SLAPP motion was filed, that there was no discovery taken, and that the attorneys' time sheets were vague. *Id*. at 1251. Here, however, the motion to strike was litigated for over a year and involved an initial motion, a renewed motion and multiple rounds of discovery. Additionally, as stated above, BofA's counsel has provided detailed records of the time they spent on each of these various tasks. Moreover, unlike in *Maughan*, where plaintiff's counsel demonstrated that they had only spent 50 hours between one partner and one associate preparing work of equal caliber to that of Google's, Henry's counsel have not shown that they spent any less time than BofA's attorneys did. *See Id*. at 1251. Therefore, no significant negative multiplier is warranted. Taking account for the four entries by Mr. Chilton that appear to be block-billed, however, another 12.6 hours of the time billed by Mr. Chilton shall be deducted.

In sum, fees of $52,698 and costs of $931.40 awarded to BofA, as the prevailing party under California Code of Civil Procedure section 425.16(c)(1), are commensurate with the extent to which the motion changed the nature and character of the lawsuit, and are reasonable based upon the time spent and the hourly rate for each attorney.[2] *See Mann*, 139 Cal. App. 4th at 345; *Ketchum*, 24 Cal. 4th at 1136.

//

//

---

[2] BofA initially claimed 236.4 hours for Mr. Elliott at $225 per hour and 48.7 hours for Mr. Chilton at $515 per hour. After taking into account the applicable reductions, the Court awards 152.5 hours for Mr. Elliott at $225 per hour and 35.7 hours for Mr. Chilton at $515 per hour.

C.   <u>Stay</u>

In the alternative, Henry asks that the Court delay ruling on the fees motion until after final judgment is entered in the case. She maintains that ruling on the motion now will impinge her right to redress the remaining claims, will preclude re-litigation of what constitutes "reasonable fees," and would be improper because the value of the award cannot be determined at this point. The appropriate fee award has been determined by the applicable lodestar method in combination with the time entries submitted to, and carefully reviewed by, the Court. It is no more difficult to determine those fees applicable to the motion to strike now than it would be at the conclusion of a trial for negligence. Furthermore, Henry has presented no support for the notion that awarding fees now will not have any impact on her ability to litigate her negligence claims, nor that it will have an undesired collateral estoppel effect.

While none of Henry's arguments is dispositive with regards to her request to delay ruling, BofA has made no showing that an interim and immediate payment of fees is necessary. As a matter of appropriate and efficient case management, implementation of the fee award on the facts of this case should await a final judgment and accounting once all claims are resolved. Accordingly, although Henry's request to delay a ruling on BofA's motion for fees is denied, implementation of this Order will be stayed until the conclusion of this action.

V.   CONCLUSION

For the reasons stated above, the motion for attorneys' fees and costs is granted. Henry's request to delay a ruling on the motion for fees is denied. Fees are awarded in the amount of $52,698 and costs are awarded in the amount of $931.40. Implementation of this fee award is stayed until the conclusion of the action.

//

//

//

//

IT IS SO ORDERED.

NO. C 09-00628 RS
ORDER

9

Dated: 08/23/2010

_____
RICHARD SEEBORG
UNITED STATES DISTRICT JUDGE